OPINION OF THE COURT

Per Curiam.

The claimant in this proceeding under section 624 of the Labor Law seeks unemployment benefits for a period during which he had failed to comply with the respondent’s reporting requirements. Although notice of that obligation is conceded, the claimant would base a constitutional right to benefits on the respondent’s failure to reiterate the continuing nature of its reporting rule at every stage of the administrative appeals process.
In September, 1973 the claimant was disqualified from receiving benefits when his local unemployment insurance office accepted his former employer’s statement that the employee had provoked his own discharge by deserting his post at the employer’s cash register without warning or good cause. The original notice of ineligibility mailed to the claimant stated on its face: "If you ask for a hearing, continue to report to your insurance and employment offices on your assigned days as long as you remain unemployed. This will protect your rights to any benefits you claim.”
The claimant requested a hearing on the initial ruling of ineligibility and also contested his discharge through a proceeding before the New York City Commission on Human *14 Rights. He argued before the Human Rights Commission that his discharge had in fact resulted solely from the former employer’s racial prejudice. Although a complete remedy of back pay and reinstatement was sought in the separate proceeding before the commission, for five months the claimant nevertheless opted to preserve any alternative right to unemployment benefits by complying with the respondent’s reporting requirements. However after February 8, 1974 he stopped reporting at his local office despite the pendency of his appeal to the Unemployment Insurance Appeal Board and despite the fact that he was at no time advised to discontinue reporting.
Two weeks later on February 22 the board handed down its decision affirming the referee’s determination of ineligibility and rejecting the claim for benefits. But in September, 1974 the Commission on Human Rights ruled that the claimant had been wrongfully discharged in violation of the New York City Human Rights Law. The requested back pay was awarded from the time of the employee’s discharge until the date of the commission’s hearing on May 1, 1974. Although the commission also directed reinstatement by the former employer, due to an apparent oversight the claimant was not directed to be compensated between May 1 and the date of his actual reinstatement on October 28, 1974.
After being informed by the commission that it lacked the authority to correct that deficiency and that resort to the courts would be the only appropriate remedy, the claimant instead applied to the Unemployment Insurance Appeal Board requesting that it reopen its prior decision based on the commission’s new findings. The board subsequently reversed its original determination of misconduct and rescinded its prior decision. Upon remand, however, the claimant’s local unemployment office found him ineligible for benefits during the uncompensated period between May 1 and September 29 since he had failed to report during that time.
Having failed to overturn this ruling by resort to the appeal board or by further appeal to the Appellate Division, the claimant now contends that benefits during the contested period could not be denied consistent with the requirements of due process. The failure to report was excusable in his view because he was never told to continue reporting after the appeal board had rejected his claim on February 22, 1974 and because the reporting rules and regulations are too vague to *15 provide actual notice that the obligation would continue even though the claim for benefits had been rejected on appeal.
This case presents no question of constitutional violation. Unless mandatory due process is to be equated with abstract notions of "ideal” fairness, the claimant’s arguments must be rejected. The Labor Law in three separate places mandates that all claimants report for accepting work assignments and for keeping local offices abreast of changes in unemployment status (Labor Law, § 590, subds 1, 8; § 596, subd 2). In addition the commissioner’s regulations unambiguously provide that a claimant may not receive credit from the day he fails to report until he next complies, unless of course the failure is excused for "good cause”, meaning circumstances beyond a claimant’s control (12 NYCRR 473.2; see, e.g., Matter of Horowitz [Corsi], 271 App Div 765).
In this case the claimant was well aware of the continuing nature and the importance of the reporting obligation. Having received a number of notices that he would have to continue reporting "as long as [he] remained] unemployed” and as long as he wished "to protect [his] rights to any benefits”, the claimant in fact complied until a few weeks prior to the board’s initial rejection of his claim. Although that decision gave no further reporting instructions one way or other, the fact remains that the claimant himself had exclusive knowledge that the charge of misconduct underlying the determination of ineligibility was not only pending before the board but was also still being contested in a different forum. Thus even during the months following the rejection of his claim, he must have known that his rights to any benefits could be revived despite the apparent finality of the board’s adverse decision. Any doubts whether or not to continue reporting could easily have been resolved by a simple inquiry.
In the absence of any inquiry or other credible excuse for failing to report during the period in question, the board determined the factual issue of "good cause” against the claimant. That determination is well supported by the record and should not be disturbed either by direct review (see, e.g., Matter of Sperling [Catherwood], 20 AD2d 584, mot for lv to app den 14 NY2d 481) or by crediting the claimant’s substitute due process challenge to the clarity of the respondent’s reporting rules and regulations.
Not only are the reporting regulations clear, workable and reasonable, but their importance is illustrated by the very *16 facts of this case. The claimant’s testimony and his attorney’s concessions indicate that he was actually employed at various times and tasks during the ostensibly uncompensated period. Because he kept no records of the days worked or the amounts earned, it would have been impossible to compute the benefits due, even if the claimant had been able to establish good cause for his failure to report.
Despite the asserted hardship involved in this particular case, the procedure which the claimant now contests was on balance fair as well as workable. The fact that an "ideal” if less pragmatic procedure might be possible hardly alters this conclusion. Unless he has been denied the opportunity to preserve possible rights to unemployment benefits, the claimant should not be heard to complain when his own failure to meet a known obligation cuts off the expectancy. Here the opportunities as well as their conditions were clearly presented to the claimant. Were due process to require more, the concept might well encompass all common disappointments and routine inequities inherent in all institutional procedures.
The order of the Appellate Division should be affirmed.